**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BRANDON HAMILTON ) | |
| ) | |
| and ) | |
| ) | |
| KATHLEEN HAMILTON ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
|        v. ) | No. _____ |
| ) | |
| OFFICER J.P. JERRELD, ) | |
|  Prince William County Police Department ) | |
| ) | |
| *In His Individual Capacity* ) | |
| ) | |
| ) | **JURY TRIAL DEMAND** |
|     SERVE: ) | |
|     Prince William County Police Dept. ) | |
|     1 County Complex Court ) | |
|     Prince William, Virginia 22192 ) | |
| ) | |
|     Defendant. ) | |
| ) | |

## <u>COMPLAINT</u>

Plaintiffs Brandon Hamilton ("Mr. Hamilton") and Kathleen Hamilton ("Mrs. Hamilton,"

collectively "Plaintiffs"), by counsel, for their Complaint against Officer J.P. Jerreld of the

Prince William County Police Department ("Ofc. Jerreld," or "Defendant"), alleges as follows:

1

**NATURE OF ACTION**

1.      This case arises out of Office J.P. Jerreld's unjust and malicious prosecution of criminal charges against Mr. and Mrs. Hamilton, without probable cause, simply for allowing their child to walk a short distance to the bus stop on her own.

2.      This is an action for damages under 42 U.S.C. § 1983 ("Section 1983") and Virginia common law for the false arrest and malicious prosecution of Mr. and Mrs. Hamilton. Plaintiffs seek damages as well as reasonable attorneys' fees under 42 U.S.C. § 1988 ("Section 1988").

**PARTIES**

3.      Mr. Hamilton and Mrs. Hamilton are adult residents of the Commonwealth of Virginia, residing in Dumfries, Virginia.

4.      Mr. and Mrs. Hamilton are married and have three children. Their youngest child was seven years old at all times relevant to this Complaint.

5.      Mr. and Mrs. Hamilton both have an extensive history of military service in the U.S. Army.

6.      Mr. Hamilton remains on active duty and holds a high-level security clearance.

7.      Mrs. Hamilton retired from the military in January 2025 after approximately 20.5 years of service. She is currently seeking a position in government service and will be required to submit to background investigations in order to secure employment.

8.      Defendant Officer J.P. Jerreld is an officer employed by the Prince William County Police Department.

9.      At all times relevant to this complaint, Ofc. Jerreld was in uniform and displaying his badge of authority. As such, he acted under color of state law.

2

**VENUE AND JURISDICTION**

10.     This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1311, because this action asserts a deprivation of one or more federal constitutional rights under Section 1983.

11.     Defendant Officer J.P. Jerreld is, and at all times relevant to this Complaint was, working for the Prince William County Police Department as a police officer. He is subject to suit under Section 1983.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place in this judicial district.

**FACTUAL BACKGROUND**

***Officers Respond to a Call Concerning Plaintiffs' Daughter***

13.     On or about January 11, 2024, Plaintiffs learned that the Prince William County Police Department had received a call from an individual who voiced concern about Plaintiffs' then 7-year-old daughter walking to the bus stop on her own.

14.     The individual called 911 and reported a 5-year-old girl walking down the sidewalk by herself and headed toward the Potomac River.

15.     The Potomac River—the nearest body of water of any significance—is 2.5 miles away from where Plaintiffs' 7-year-old daughter had been located at the time of this call.

*Mr. and Mrs. Hamilton's Schedule*

16.    Since December 2023, due to a change in Mr. Hamilton's work schedule, Plaintiffs' daughter stayed at home alone for about half an hour on some mornings before departing for the bus stop.

17.    Mr. Hamilton works at the Pentagon, and his shift changed such that he began work at 2:00am and left work at 10:00am.

18.    Mr. Hamilton worked a rotating "four-on, four-off" schedule, resulting in him having between one (1) and three (3) weekdays off per week.

19.    Mrs. Hamilton worked from home 1-2 days per week, Monday through Friday. On the remaining days, Mrs. Hamilton's job required she leave home at 8:00am to attend work in-person.

20.    Mr. and Mrs. Hamilton's daughter only stayed alone at home for half an hour in the mornings when both: (1) Mrs. Hamilton's employer required she attend work in-person; and (2) Mr. Hamilton did not have the day off work.

21.    These are the only occasions on which Plaintiffs' daughter remained at home for approximately half an hour before leaving to walk to the bus stop a short distance away.

22.    Even before the change to Mr. Hamilton's work schedule, Plaintiffs' daughter walked about 400 meters to the bus stop on her own, using the sidewalk available to her for the entirety of the route and never having to cross the street.

23.    Plaintiffs' repeatedly demonstrated to her parents that she had the skills and ability to safely see herself to the bus stop in the mornings when necessary.

24.    Plaintiffs were well acquainted with their neighbors, and Plaintiffs' daughter walked past the home of her best friend and her former teacher on her way to the bus stop.

25.     Plaintiffs' daughter met with two of her friends at the bus stop and waited with them for the bus to arrive.

26.     Plaintiffs' daughter is one of at least several children who walk to the same bus stop on their own, unaccompanied by an adult.

27.     Plaintiffs provided their daughter with a Gizmo watch that enabled her to call, text, or video conference with her mother in the event she encountered any problems on her way to the bus stop.

28.     The location of Plaintiffs' daughter's bus stop had not changed since 2021. In the two school years preceding these events, Plaintiffs' daughter walked to the same bus stop each day with her older brother.

29.     Plaintiffs' daughter is familiar with the route to the bus stop, the surrounding area, and the individuals she encounters on the same walk she has safely completed every day for years.

30.     The elementary school that Plaintiffs' daughter attends is visible from the backyard of their home. Plaintiffs' daughter took the bus to school rather than walk to avoid having to cross Potomac Shores Parkway without a crosswalk.

31.     Prince William County Schools maintained rules regarding students walking to their bus stop, and required only that kindergartner students be accompanied by an escort.

32.     Plaintiffs' daughter was in  the Second Grade, in the third quarter of the school year, at all times relevant to this Complaint.

### Prince William County Officers Respond to Call Regarding Plaintiffs' Daughter

33.     Officers from the Prince William County Police Department responded to the call about Plaintiffs' daughter and spoke to parents at her bus stop.

34.     One of the parents informed the officers of the identity of Plaintiffs' daughter and confirmed that she had safely made it onto the bus.

35.     The officers proceeded to Covington Harper Elementary School.

36.     The officers found Plaintiffs' daughter at school—safe and with no signs of distress—and asked her about the events that occurred earlier that day.

37.     The officers did not notify Mr. and Mrs. Hamilton that they intended to speak with their daughter at school and did not seek their permission, presence, or participation.

38.     Ofc. Jerreld called Mrs. Hamilton at work around 9:30am, *after* he had already visited her daughter's elementary school and spoke to her daughter in person.

39.     On this call, Ofc. Jerreld told Mrs. Hamilton that he was currently sitting outside of their residence. He proceeded to question Mrs. Hamilton about the events of that morning for approximately fifteen (15) minutes.

40.     At the time of this call, Mrs. Hamilton knew from the GPS on her daughter's Gizmo watch that she had arrived safely at school.

41.     Several minutes after this call ended, Ofc. Jerreld called Mrs. Hamilton at work again and told her he needed additional information "for their report."

42.     Mrs. Hamilton informed Ofc. Jerreld that there were no laws in Virginia dictating the age that a child must be to walk unaccompanied to the bus stop.

43.     Ofc. Jerreld became angry with Mrs. Hamilton and yelled that her daughter was "too young" and that the bus stop was "too far."

44.     A female officer intervened and took Ofc. Jerreld's place on the call.

45.     The female officer told Mrs. Hamilton that they simply needed information for the report and that the events that had transpired that morning were not a cause for concern.

46. Mrs. Hamilton informed Mr. Hamilton about the calls from the police, and Mr. Hamilton reached out to Ofc. Jerreld later that day to inquire about what had happened.

***Charges Brought Against Mr. and Mrs. Hamilton***

47. During the call between Ofc. Jerreld and Mr. Hamilton, Ofc. Jerreld told Mr. Hamilton that he intended to refer charges against both Mr. and Mrs. Hamilton for "contributing to the delinquency of a minor."

48. Ofc. Jerreld informed Mr. Hamilton that, in his opinion, Plaintiffs' daughter was too young to be left at home alone for any length of time or to walk to the bus stop without supervision.

49. There are no state or local laws which dictate the minimum age for a child to be left alone at home or to walk to a bus stop.

50. Ofc. Jerreld swore out summonses for both Mr. and Mrs. Hamilton on January 11, 2024, for which he provided a written statement of facts in support. *See* Exhibits A and B to Complaint.

51. The statements of facts submitted by Ofc. Jerreld in support of the summonses omit material facts that would have precluded the magistrate having made a finding of probable cause. Ex. A, B.

52. No summonses for Mr. and Mrs. Hamilton would have been issued had Ofc. Jerreld not omitted material facts in his application for these summonses. Ex. A, B.

53. Ofc. Jerreld omitted that the report of a five-year-old child walking alone away from Covington-Harper Elementary School towards the water to which he responded turned out to be unsubstantiated.

54.     Ofc. Jerreld discovered during his investigation that Mr. and Mrs. Hamilton's daughter is seven years old, not five.

55.     Ofc. Jerreld discovered during his investigation that Mr. and Mrs. Hamilton's daughter had been en route to her bus stop and had not been walking away from Covington Elementary School. He did not include the fact that Mr. and Mrs. Hamilton's daughter had not strayed from the direct path to the bus stop that she followed daily in his summons applications.

56.     Ofc. Jerreld discovered during his investigation that the only body of water nearby is the Potomac River, which is approximately 2.5 miles away from the bus stop to which Mr. and Mrs. Hamilton's daughter had been walking. He did not include the fact that Mr. and Mrs. Hamilton's daughter had not been discovered near any body of water or other source of danger in his summons applications.

57.     Ofc. Jerreld discovered during his investigation that Mr. and Mrs. Hamilton's daughter had arrived at the bus stop, boarded the bus, and safely arrived at school. He did not include these facts in his summons applications.

58.     On or about January 11, 2024, Ofc. Jerreld served Mr. Hamilton with a summons charging him with the offense of "contributing to the delinquency of a minor" under Section 18.2–371 of the Virginia law, a Class 1 misdemeanor. Va. Code § 18.2-371.

59.     On or about January 12, 2024, Ofc. Jerreld served Mrs. Hamilton with a summons, charging her with the offense of "contributing to the delinquency of a minor" under Section 18.2–371 of the Virginia law, a Class 1 misdemeanor. Va. Code § 18.2-371.

60.     Service of the summons required that Mrs. Hamilton miss half of a day of work on January 12, 2024.

8

61.     Section 18.2-371 of the Virginia Code provides, in relevant part, that "Any person 18 years of age or older, including the parent of any child, who (i) willfully contributes to, encourages, or causes any act, omission, or condition that renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in § 16.1-228 . . . is guilty of a Class 1 misdemeanor." Va. Code § 18.2-371.

62.     Section 16.1-228(1) of the Virginia Code defines an "abused or neglected child" as any child whose:

> [P]arents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions . . . .

Va. Code § 16.1-228.

63.     Section 16.1-228(5) of the Virginia Code further defines an "abused or neglected child," in relevant part, as any child who "is without parental care or guardianship caused by the unreasonable absence . . . of the child's parent . . . ". Va. Code § 16.1-228(5).

64.     Ofc. Jerreld had no reason to believe that Plaintiffs' actions, in allowing their daughter to remain at home for a short period of time and walk a short distance to the bus stop alone, rendered her "abused or neglected" as defined in §16.1-228(1) and (5).

65.     Further, the definition of "abused or neglected child" found in § 63.100(2) of the Virginia Code provides, in relevant part:

> No child whose parent or other person responsible for his care allows the child to engage in independent activities without adult supervision shall for that reason alone be considered to be an abused or neglected child provided that (a) such independent activities are appropriate based on the child's age, maturity, and physical and mental abilities and (b) such lack of supervision does not constitute conduct that is so grossly negligent as to endanger the health or safety of the child.

9

> *Such independent activities include traveling to or from school or nearby locations by bicycle or foot, playing outdoors, or remaining at home for a reasonable period of time.*

Va. Code § 63.100(2) (emphasis added).

***Outcome of the Charges Brought Against Plaintiffs***

66.     Based on the charges brought against Plaintiffs by Ofc. Jerreld, the Prince William County Police Department referred the case to Prince William County Department of Social Services ("DSS").

67.     This referral to DSS necessitated that Plaintiffs' daughter be interviewed about her parents, her relationship with her parents, and the conditions of her home.

68.     DSS also spoke with Mrs. Hamilton to complete a Family Assessment and investigation. A report of this assessment and investigation will be kept on file for several years.

69.     DSS concluded their Family Assessment and investigation and closed the file initiated by the Prince William County Police Department's report. DSS found that no additional services from DSS were required.

70.     Based on the nature of their work, Mr. Hamilton and Mrs. Hamilton were required to discuss the charge brought against them with their chain of command.

71.     Mr. and Mrs. Hamilton each hired defense counsel to defend them against the charges brought by Ofc. Jerreld.

72.     Upon review of the charge brought against Plaintiffs by Ofc. Jerreld, the Commonwealth Attorneys' Office determined that Plaintiffs had not committed a crime.

73.     On March 21, 2024, the Commonwealth Attorneys' Office nolle prossed the charge brought against both Mr. Hamilton and Mrs. Hamilton.

10

74.    Mr. and Mrs. Hamilton both pursued expungement of the criminal charge.

75.    On December 20, 2024, following a hearing in the Prince William County Circuit Court, a judge ordered the criminal charge against Mr. and Mrs. Hamilton to be expunged.

## COUNT I
### Civil Rights Violation of 42 U.S.C. § 1983: Fourth Amendment
### Unreasonable Search and Seizure

76.    The allegations in the foregoing paragraphs are incorporated as if realleged herein.

77.    At all material times, Ofc. Jerreld acted under color of state or local law.

78.    Ofc. Jerreld secured summonses for Mr. and Mrs. Hamilton, respectively, without probable cause to believe either individual committed a criminal offense.

79.    No reasonably competent officer would have concluded that summons should issue against Mr. and Mrs. Hamilton under these circumstances.

80.    Ofc. Jerreld knew that Plaintiffs' daughter had been located en route to the bus stop when the Prince William County Police Department received a call from an individual concerned about her wellbeing.

81.    Ofc. Jerreld omitted this fact from his sworn summons applications.

82.    Ofc. Jerreld knew that Plaintiffs' daughter had safely made it on the bus and to her elementary school.

83.    Ofc. Jerreld omitted this fact from his sworn summons applications.

84.    From speaking with the Plaintiffs' daughter and with both Plaintiffs, Ofc. Jerreld knew that Plaintiffs had not subjected their daughter to abuse or neglect by allowing her to walk to the bus stop.

85. The information collected during Ofc. Jerreld's investigation into Plaintiff's actions with respect to their daughter demonstrated only that they had deemed their child to be of an age, maturity, and ability to independently travel by foot to school and stay alone at home for a reasonable length of time.

86. Ofc. Jerreld omitted these facts from his sworn summons applications.

87. It was objectively unreasonable for Ofc. Jerreld to conclude that probable cause existed to charge Mr. and Mrs. Hamilton with the misdemeanor offense of "contributing to the delinquency of a minor" under § 18.2-371 of the Virginia Code.

88. By his actions, Ofc. Jerreld deprived Mr. and Mrs. Hamilton of the established right to be free from unreasonable search and seizure, in violation of their rights under Section 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

89. As the direct and proximate cause of Ofc. Jerreld's actions, Mr. and Mrs. Hamilton have suffered financial loss and suffered mental and emotional distress as well as harm to their reputation.

90. Mr. and Mrs. Hamilton are entitled to declaratory and monetary relief, including compensatory damages, punitive damages, attorneys' fees and costs.

## COUNT II
**Malicious Prosecution in Violation of Virginia Common Law**

91. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

92. Ofc. Jerreld secured summonses for Mr. and Mrs. Hamilton, respectively, without probable cause to believe either individual committed a criminal offense.

93.    No reasonably competent officer would have concluded that summonses should issue to Mr. and Mrs. Hamilton under the circumstances described herein.

94.    Ofc. Jerreld knew Plaintiffs' daughter had been located en route to the bus stop when the Prince William County Police Department received a call from an individual concerned about her wellbeing.

95.    Ofc. Jerreld omitted this fact from his sworn summons applications.

96.    Ofc. Jerreld knew that Plaintiffs' daughter had safely made it on the bus and to her elementary school.

97.    Ofc. Jerreld omitted this fact from his sworn summons applications.

98.    From speaking with Plaintiffs' daughter, Ofc. Jerreld knew that Plaintiffs had not subjected her to abuse or neglect by allowing her to walk to the bus stop.

99.    The information collected during Ofc. Jerreld's investigation into Plaintiffs' actions with respect to their daughter demonstrated only that they had deemed their child to be of an age, maturity, and ability to independently travel by foot to school and stay alone at home for a reasonable length of time.

100.    Ofc. Jerreld omitted these facts from his sworn summons applications.

101.    Ofc. Jerreld had no factual basis to believe that Plaintiffs' conduct, in permitting their child to conduct these activities independently, could be deemed "so grossly negligent as to endanger the health or safety of the child," as required for a finding of child neglect under Virginia law.

102.    It was objectively unreasonable for Ofc. Jerreld to conclude that probable cause existed to charge Mr. and Mrs. Hamilton with the misdemeanor offense of "contributing to the delinquency of a minor" under § 18.2-371 of the Virginia Code.

13

103.    As a result of Ofc. Jerreld's actions, Mr. and Mrs. Hamilton suffered injuries, including emotional pain and suffering, embarrassment, humiliation, personal and professional reputational harm, and mental distress.

104.    Plaintiffs are entitled to declaratory and monetary relief, including compensatory damages, punitive damages, attorneys' fees, and costs.

## PRAYER FOR RELIEF

Plaintiffs Brandon Hamilton and Kathleen Hamilton request that this Court enter judgment in their favor against Defendant Officer J.P. Jerreld and:

1.  Award Plaintiff compensatory damages in an amount to be determined at trial;

2.  Award Plaintiff punitive damages in the amount of $350,000.00 for each Count;

3.  Award Plaintiff attorneys' fees, and costs; and

4.  Award Plaintiff such other and further relief as may be appropriate.

## JURY DEMAND

**PLAINTIFFS BRANDON HAMILTON AND KATHLEEN HAMILTON DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated:              February 10, 2025

Respectfully,

BRANDON HAMILTON
and
KATHLEEN HAIMLTON


         /s/ *Katherine L. Herrmann*
Joshua Erlich, VA Bar No. 81298
Katherine L. Herrmann, VA Bar No. 83203

14

THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd., Ste. 700
Arlington, VA  22209
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
        kherrmann@erlichlawoffice.com

15